AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

FILED

SEP 1 2 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

for the

Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Apple iPhone 6 cell phone
IMEI 352021078959962

)
)
)
)
)
)

Case No.    19MJ3902

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

SEE AFFIDAVIT OF HSI SPECIAL AGENT DAVID MARSHALL

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Marshall, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___9/12/19___

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

## *Item to be Searched*

The item to be searched is as follows:

> Apple iPhone 6 cell phone
> IMEI 352021078959962
> (**"Target Device"**)

The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, San Diego, CA, 92101.

1

# Attachment B

## *Items to be Seized*

Authorization to search the cellular/mobile telephone described in Attachment A (the **"Target Device"**) includes the search of disks, memory cards, deleted data, remnant data, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from December 9, 2018 up to and including January 9, 2019:

a.   tending to indicate efforts to import methamphetamine and other federally controlled substance from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine and other federally controlled substance from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine and other federally controlled substance from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine and other federally controlled substance from Mexico into the United States;

e.   tending to identify the movement of proceeds associated with the trafficking of methamphetamine and other federally controlled substance that was imported from Mexico into the United States;

f.      tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent David Marshall, with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, do hereby state the following is true to my knowledge and belief:

### INTRODUCTION

1.     I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A (the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952 and 960, as further described in Attachment B:

> Apple iPhone 6 cell phone
> IMEI 352021078959962
> ("**Target Device**")

This search supports an investigation and prosecution of Engelber MARTINEZ-Avila, who is presently charged with committing violations of 21 U.S.C. §§ 952 and 960.  A factual explanation supporting probable cause follows.

2.     The Target Device was seized from MARTINEZ on January 9, 2019, at the time of his arrest at the Otay Mesa, California, Port of Entry, as he attempted to smuggle methamphetamine, heroin, and fentanyl into the United States.  The Target Device is currently in the possession of DHS and is stored at 880 Front Street, San Diego, California, 92101.

3.     Based on the information below, there is probable cause to believe a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4.     The information contained in this affidavit is based upon my experience, training, and consultation with other federal law enforcement agents.  The evidence and information contained herein was developed from my review of documents and evidence related to this case.

## TRAINING AND EXPERIENCE

5.      I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I am currently assigned to the Computer Forensics Group. I have held my current position with HSI since January 2007. Previously, I was assigned to various HSI (and U.S. Customs) San Ysidro Narcotics Groups.

6.      Prior to becoming an HSI Special Agent, I was employed as a private sector software engineer from 1992 to July 2002.

7.      I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants.  I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

8.      My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including methamphetamine, and the investigation of persons in possession of narcotics for purposes of sales and transportation. In addition, I speak with other narcotics investigators regarding the manner in which sellers of narcotics store, transport and sell narcotics. I also regularly extract and analyze mobile devices and other digital evidence associated with narcotic investigations.

9.      In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations, including reviewing evidence, conducting physical and electronic surveillance, and executing search and arrest warrants. I have interviewed defendants and witnesses while conducting various investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

10.      Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking

2

investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

      a.    Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

      b.    Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

      c.    Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

      d.    Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

      e.    Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

      f.    The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

    11.    Subscriber Identity Module ("SIM") Cards are smart cards that store data for cellular telephone subscribers. Such data can include a phone number, network authorization data, personal security keys, contact lists and stored text messages. Evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

    12.    The following is based on my own investigation, oral and written reports by other law enforcement officers, interviews, subpoenaed and public records, database checks, and other investigations. Because this affidavit is made for the limited purpose of

*Affidavit in Support of Search Warrant*

obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Conversations and discussions below are set forth in substance unless noted. Dates and times are approximate

## FACTS IN SUPPORT OF PROBABLE CAUSE

13.     On January 9, 2019, at approximately 0851 hours, Engelber MARTINEZ-Avila (MARTINEZ) applied for admission into the United States at the Otay Mesa, California, Port of Entry, as the driver and sole occupant of a 2008 Toyota Sienna, bearing Mexico license plates (the Vehicle). The Otay Mesa Port of Entry is located within the Southern District of California.

14.     Customs and Border Protection Officer (CBPO) S. Andaluz conducted the preprimary inspection of MARTINEZ with the assistance of a Human/Narcotics Detector Dog (HNDD). The HNDD alerted to the gas tank area of the Toyota Sienna that was driven by MARTINEZ.   CBPO A. Spinoccia continued the preprimary inspection of MARTINEZ' vehicle, tapped the gas tank, and noted the gas tank was very solid.   When asked by CBPO Spinoccia, MARTINEZ stated he was going to the Home Depot on Palm Avenue in San Diego and gave two negative declarations.   CBPO Spinoccia referred the vehicle for a Z-portal inspection.

15.     CBPO F. Ramos conducted a Z-portal scan of the Toyota Sienna and observed anomalies within the doors, quarter panels, and rear bumper area of the vehicle.   CBPO Ramos referred the vehicle for a secondary inspection.

16.     CBPO R. Lopez conducted the secondary inspection of the Toyota Sienna. During the secondary inspection, CBPO Lopez noticed the gas tank tapped solid and observed the fuel gauge was marked full.   Nine gallons of fuel were removed from the gas tank. CBPO Lopez extracted a total of 91 packages from within the vehicle. Packages were found in the vehicle's rear bumper, driver side rear quarter panel, passenger side rear quarter panel, passenger side sliding door, driver front door, passenger front door, driver rear seat, passenger side rear seat, and gas tank.

4

1    17.    Packages were randomly selected and the contents field-tested positive for the

2 properties of fentanyl, heroin, methamphetamine, and acetaminophen.    In total, the

3 packages contained approximately 2.5 kilograms of fentanyl, 2.52 kilograms of heroin,

4 54.66 kilograms of methamphetamine, and 1.92 kilograms of acetaminophen.  After field-

5 testing these packages, Officer Lopez placed MARTINEZ under arrest.

6    18.    After being placed under arrest, MARTINEZ received his Miranda rights at

7 approximately 1137 hours and requested an attorney.   MARTINEZ' cellular phone, the

8 **Target Device**, was detained during the process of searching the Vehicle and placing

9 MARTINEZ under arrest.  I responded to the Port of Entry and seized the Vehicle, drugs,

10 and the **Target Device**.

11    19.    Based upon my experience investigating drug smuggling, my training, and my

12 consultation with other investigators who have experience investigating drug smuggling in

13 near the border, I understand drug smugglers will seek to smuggle drugs from Mexico to

14 the United States by hiding the drugs in hidden compartments of cars, and in non-factory

15 compartments (*i.e.*, compartments the manufacturer did not design for ordinary use).

16 Smugglers will then drive north from Mexico and seek to pass through Ports of Entry

17 (POEs) with the drugs undetected. (I am also aware such individuals will sometimes try to

18 generate a history of crossings to show that driving through a POE is ordinary behavior for

19 them.) When they arrive in the United States, smugglers will take the drugs to a discreet

20 location to transfer them to other people involved in the distribution chain, who can then

21 send the drugs to other locations for downstream distribution.

22    20.    Given the facts surrounding the arrest of MARTINEZ, and based upon my

23 experience and training, as well as consultation with other law enforcement officers

24 experienced in drug smuggling investigations, I submit there is probable cause to believe

25 information relevant to the smuggling activities of MARTINEZ will be found in the **Target**

26 **Device**. Such evidence, which could be in the form of communications, records, data

27 (including but not limited to emails, text messages, other social messaging applications),

28 photographs, audio files, videos, or location data:

5

a.   tending to indicate efforts to import methamphetamine and other federally controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine and other federally controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine and other federally controlled substance from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine and other federally controlled substance from Mexico into the United States;

e.   tending to identify the movement of proceeds associated with the trafficking of methamphetamine and other federally controlled substance that was imported from Mexico into the United States;

f.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21.   I believe the appropriate date range for the search of the **Target Device** is from December 9, 2018 up to and including January 9, 2019 (the day of the events described in this affidavit).

## CELL PHONE METHODOLOGY

22.   It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can

6

serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.    Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//

//

//

7

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.   I forensically extracted and reviewed the contents of MARTINEZ' phone under HSI Electronic Border Search authority in January 2019. Information obtained from that review was not used in this probable cause statement.

## CONCLUSION

26.   Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that MARTINEZ used the **Target Device** to facilitate the offense of drug smuggling. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

27.   Because the **Target Device** was promptly detained and later seized following the arrest of MARTINEZ at the Otay Mesa POE, there is probable cause to believe that evidence of the smuggling offense committed by MARTINEZ continues to exist on the **Target Device.** As stated above, I believe the date range for this search is from December 9, 2018, up to and including January 9, 2019.

28.   WHEREFORE, I request the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

DAVID MARSHALL
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on
this ___ day of September, 2019.

THE HON. LINDA LOPEZ
United States Magistrate Judge

8